Mr. Griffin has relentlessly and properly challenged his ACCA sentence in the District Court. I would like to discuss two topics with the Court this morning. First, the District Court did not carry out its duty to measure its own jurisdiction under Section 2244B. And second, even if the Court did carry out that duty, the Court erred in denying Mr. Griffin's motion as successive. You better address the timeliness issue under 2255F because I think you lose on that regardless of your other arguments. Yes, Your Honor. The timeliness issue is prominent here. Judge Forrester wrote about it at length for the first time in 2009. I would like to point out that the District Court has never made a finding based on timeliness. It doesn't have to. We can look at that. You make your arguments on what the facts are and what the law should be applied to them. And if we decide you lose as a matter of law, there's no point in remanding. Yes, Your Honor. Or not even. If we wanted to let the District Court consider it, we could simply not speak to it or we could remand. But it seems to me like this has been going on for long enough that if your argument for timeliness is unpersuasive as a matter of law, we ought to bring it to a conclusion now. Yes, sir. And I'll talk about timeliness then immediately. Well, in the meantime, I thought Judge Forrester did rule in Docket 75 at page 11. Yes, Your Honor. Judge Forrester did talk at length about timeliness, but that was not the basis for his ruling. It looked like an alternative holding to me. Well, Judge Forrester did not himself declare it to be an independent and alternative holding. Early in that order that you're looking at, Judge Anderson, Judge Forrester held that the 2255 motion was successive. He then moved on to query as an alternative question whether or not the motion was timely to begin with. Judge Forrester raised that on his own, but it really is dicta. His ultimate holding did not depend upon the timeliness question. Now, he also got the timeliness question. Except the last sentence says, right after he finishes over a two-page pretty intense discussion, says, for the foregoing reasons, that would be a reason, wouldn't it, what he had just mentioned? And he starts off that paragraph, even if the court were to dispose of the numerous procedural hurdles, petitioners claim it would fail on the merits. Yes. The use of the subjective tense there by Judge Forrester shows that that is an additional ground that isn't the basis for his holding. On page 5, I believe, he did declare that the motion was successive. And to your question, Judge Carnes, at the end, Judge Forrester certainly did include everything in that conclusory sentence, but again, this court can look at that order and decide that the timeliness declaration or determination was not the basis of that denial. And if the court were to look at the timeliness question with the fresh eye here, the court should agree with me that Mr. Griffin was, in fact, timely. The U.S. Supreme Court in Johnson, the 2005 Johnson case, said that a defendant must provide prompt action once his state court convictions are vacated. Here, Mr. Griffin filed his 2255 motion in the district court. That's not your problem. Your problem is lack of diligence after the federal court sentence enhanced on the basis of the three prior Georgia convictions. You waited anywhere from six to eight years before you filed a motion in the state court to vacate them. Well, Your Honor, I need to disagree with you on that point. Mr. Griffin did file a motion in the Superior Court of Fulton County in February of 1990. He attached it to his Rule 59e motion with Judge Forrester in 2009 in response to Judge Forrester's discussion of the timeliness question. Judge Forrester sentenced Mr. Griffin in May of 89. And nine months later, Mr. Griffin filed this letter motion in the Fulton County Superior Court challenging his three burglary convictions. Now, Judge Carnes, your question, why can't this court simply deny us on timeliness? Well, wait a minute. True, you did that in February of right shortly, four or five months after the federal sentence. But you got no answer, and you did nothing for over six years. You're right, Judge Anderson, that Mr. Griffin's counsel filed a formal motion in December of 96, which is about six and a half years later. Mr. Griffin explained in his 59e motion, document 76, which responded to Judge Forrester's discussion of timeliness, that there's a deep factual narrative there that needs to be explored. Mr. Griffin asked for an evidentiary hearing. We would ask for one below if the court was reading. What deep factual narrative? Mr. Griffin explained in his Rule 59e motion that after he filed the letter motion, which he attached, he then waited for the district court to, I'm sorry, the Superior Court to respond. He didn't get a response. Then he hired counsel. He said once he hired counsel, the motion languished. That was his phrase. After counsel was hired, the motion languished until finally in December of 96, an attorney filed formal state habeas petitions. Mr. Griffin did work hard during that six-year period to have the Superior Court review his claim. Now, it's not simply a matter of sending in the letter motion and then sitting on his hands for six years. From a prison cell, he was trying his best to move the issue forward in the Superior Court. I don't remember anything that he did after filing that letter in February. I don't remember that he did anything until he hired counsel and the counsel filed the state petition in December of 96, which, as I say, was over six and a half years. Yes, Your Honor. Mr. Griffin explained in his 59e motion that he did do something in that interim. He sent letters, follow-up letters, to the Superior Court inquiring about the status of his motion. And then he did hire counsel. And then he said the case languished even then. This is a factual narrative that warrants an evidentiary hearing in the district court. We never got one. This very — Evidentiary hearing on what? On the timeliness question. No. The diligence. Evidentiary hearing on what facts? What facts are disputed? Mr. Griffin warrants an opportunity to explain all that he — Oh, no, no. Tell me what facts are disputed. Did you say disputed, Your Honor? Disputed. Yes, sir. Material facts. Tell me. I don't know that any facts are disputed. However, Mr. Griffin has not had a full chance to — Then there's no need to have an evidentiary hearing if there are no disputed facts. You plead your facts in the motion. And the court looks at them and says, as a matter of law, even if you can prove that, it doesn't entitle you to relief. Or it says, all right, that on its face entitles you to relief. What does this government say? Doesn't the government dispute some facts or does it? And then you have an evidentiary hearing on the disputed facts. You don't have a hearing just for the guy to get in front of him and say, here's my theory of why I ought to prevail. Your Honor, I don't read the rule about evidentiary hearings quite the same way you do. In fact, Mr. Griffin is not required to prove his case first simply to get the evidentiary hearing. He pled enough facts in his 59E motion to warrant the hearing in which he could then add more facts. What facts did he plead that would have entitled him to relief had he been able to prove them? First, Mr. Griffin provided the motion that he filed nine months after his sentencing hearing back in the Superior Court. Second, Mr. Griffin talked about the various letters he wrote to the Superior Court urging them to review his motion. Third, he said he hired an attorney. Fourth, after that time period, the motion languished in his words. And then fifth, his counsel eventually filed a formal motion. And therefore what? What under the law, what is the doctrine under the law that entitles him to get around the statute of limitations if all of those facts are true? Well, the Johnson case itself in the Supreme Court asked the court to measure the diligence. And it's a factual, specific inquiry in each and every case. But the statute of limitations has four specific provisions. I thought you had conceded that you don't fit under any of those and that basically the way I read your brief is you're arguing or would argue totally. Am I wrong? Yes, you are, Your Honor. If I didn't argue it properly or adequately, that's — I apologize. We do argue that the new vacated State convictions was a fact under 2255F4 that triggered the one-year statute of limitations. I want to remind the Court, however — What new facts? I'm sorry, Your Honor? What new facts? The new fact was the vacated State convictions. In 1996 or 7? It was 1997 that Judge Downs — When did he file this 2255? Your Honor, I see my time is up. May I complete my answer to your question? Mr. Griffin filed his formal 2255 on the vacated counts claim in April of 1997, just before the end of the AEDPA one-year grace period. And it was also before Judge Downs officially vacated the State convictions. Mr. Griffin did that in anticipation of that vacay tour and asked Judge Forrester to stay the motion. After Judge Downs in Superior Court vacated the convictions, Mr. Griffin amended the 2255 to declare that, in fact, the new fact, the vacay tour, had arrived. Unless the Court has any further questions, I'll sit down. I do. I had not gathered from your brief that he did anything at all. In fact, I recall, I think, Judge Forrester said he did nothing at all after he sent a letter to the Superior Court judge with a copy to the prosecutor. He did nothing for however many years it is. But even if he wrote another letter or two to the judge, the Superior Court judge, I don't think that could possibly warrant even a hearing when he waited six and a half years. That may be so, Your Honor, but Mr. Griffin pled additional facts. He said that he hired an attorney, and in the case languished. Well, even if he hired an attorney, that wouldn't help him because the ineffective assistance of counsel in a collateral proceeding like that wouldn't help him, would it? Generally, that's true, but there is an exception. When counsel abandons his client, then the Court may overlook that time period. Here, that may have been what happened. Mr. Griffin, as a pro se, uneducated prisoner, was doing his best to lay out the facts and the issues, and he urged Judge Forrester for an evidentiary hearing. He didn't get it. This conversation that we're having here is exactly why the case ought to go back to the district court for the Court to have a thorough exploration of this narrative. I have not looked at this Rule 59e that you keep talking about where he made these factual allegations. What's the docket number on that? That is docket 76, Your Honor. It was in response to Judge Forrester's ruling on the Rule 60b that we began this conversation talking about. And Judge Forrester denies, we know he denies the 60b, and you are denied a COA by this court. Judge Forrester also in the interim denies the 59e, and in that motion, that order is where he goes into great detail about this letter and why it doesn't really count for anything, sent to the wrong address, not on the electronic docket. Did you all or did he try to appeal the denial of the 59e or obtain a COA on that? Your chart, which is helpful, I don't see any entry on that here. Thank you, Your Honor. If I could look at the chart myself. It starts December 8, 2009. Judge Forrester denies it. Yes, sir. And the next entry is the COA is denied on the Rule 60. I don't see anything indicating he tried to appeal or get a COA on the 59e where Judge Forrester issued a definitive ruling about this letter. That's correct, Your Honor. I believe it's fair, though, to Mr. Griffin, as a pro se defendant, to assume that his COA application would, in fact, encompass all that Judge Forrester had done on this issue. It all related back to the 2255, the 60b order, and then the 59 order piggybacked on that. So it was all one event, if you will, and this court did deny the COA at that time. Okay. Ms. Berg. May it please the Court. Tippi Birch on behalf of the United States of America. Based on the Court's questions to Mr. Dodge, I'd like to dive in on the letter that we were talking about. The letter that Griffin raised for the first time in September of 2009 was well considered by the district court. As Judge Carnes pointed out, there is a lengthy order in the record at its document 84. It's an 11-page order where the district court goes through the details of the letter. And it's important for a couple of reasons, one of which is that the district court did not, when Mr. Griffin raised the letter, did not dismiss the argument as moot, did not say that it was irrelevant and that it didn't matter because the 1997 2255 motion had been successive. But rather, the district court dug in on the merits of the letter. That's important because it shows that that was an alternative holding of the district court. The due diligence and the problem that Griffin has with the due diligence was very much an alternative holding and not just dicta. And I think the 11-page order that we then see diving further into Griffin's arguments on that question demonstrate the importance of that for the district court. The other thing that's important about it is that the district court did go through and analyze the letter and said it was not at all clear that that letter had been filed within the legal meaning of filed. But then went on to say, even had it been filed, that there was still a due diligence problem here because we really don't see anything happen between that letter in February of 1990 and then the habeas petitions that do get filed by counsel in December of 1996. There's nothing that's showing up on the docket. And that passage of time alone, if we're just concentrating on that letter, that passage of time alone is a due diligence problem for Griffin. He cannot demonstrate due diligence based on that. That is clear that the district court analyzed that in 2009. It was a critical part of its holding in the order that it issued on that, which is, again, Document 84. And my question, Mr. Dodge, was because I can't tell from this chart and records don't go back as far in our electronic docket, but clearly he appealed a 60B and was denied a COA. Did he try to appeal this denial of the Rule 59E where we get the long ruling on the letter? Or did our COA address that in any way? We don't know. We don't see anything separate on the docket indicating a separate appeal of the Rule 59. Based on the timing, it's possible that this court had the district court's ruling on the Rule 59 motion before it when it denied the COA. But what I'm unable to tell you is what exactly that record was that was before this court when it made the ruling on the Rule 60. Well, either way, it doesn't look very good for Mr. Griffin because if he didn't try to appeal it, well, then he stuck with a district court ruling that he didn't appeal. If he did collapse it within the 60B sort of appeal, he lost with us on that. That's precisely right. That's because this court found, denied the COA, finding that Griffin could not even establish the requirements for that to be reviewed by this court. And that, this has been going on for quite a long time. And it's clear, at a minimum, this was fully litigated in 2009. All of these facts were before the district court. And the district court entered two orders that deal with this at great length. And that should be the end. We should not be back talking about this again. And the finality that's necessary, the reason that we have due diligence requirements, statute of limitations requirements, is because there must be some finality here. We're running into incredible record problems here based on the age of the case, trying to sort back through what happened. But what is clear from the record is that all of these questions have been fully litigated in the district court and in this court, or have not been appealed. And so this Court should not consider, should not remand, because the district court, based on that, properly found that it did not have jurisdiction. This is not a new fact that would entitle Griffin to successive, a successive 22-5 motion because of the previous, many previous attempts to litigate this that were successful in terms of having those litigated. They did not turn out how Mr. Griffin would have preferred, but he was successful in having the issues considered by the courts. And that's all that's required. It is true, however, that the district court was wrong about the jurisdiction issue in this case. Is it not true that our Boyd opinion is just squarely on point and holds that the first 2255 was before the vacature and therefore doesn't render the And then with respect to the second or the third or how many ever there were that were denied as successive under Boyd, that does not render the next one, which is the one before us, successive. So it seems pretty clear to me that Boyd is compelling, dictates the result on that. I think Boyd would have been compelling on an earlier 2255, pre-2009. I think Boyd is distinguishable from where we stand today because of the due diligence problem that the district court has already resolved against Mr. Griffin. I think that's factually different. Yeah, but that goes to the statute of limitations, not to the jurisdictional issue. Correct, Your Honor, but I think Boyd is distinguishable. I think we stand in a different posture than in the Boyd case because we also have a definitive ruling from the district court, whereas in the Boyd case there was some concern that the timeliness issue that the court had looked at. Again, that has to do with timeliness, not jurisdiction. Well, and, Your Honor, that's correct. I do think there's some overlap here because the courts talk about both in terms of jurisdiction and in terms of being a new fact, talk about it sort of together in terms of whether what the due diligence inquiry informs. Because the lack of due diligence is related to the timeliness requirement because the one-year statute of limitations requires that action be taken within one year of when the information should have been discovered with due diligence. So the requirement really does come into play in a couple of different places in the inquiry here. And I think this case is very distinguishable from Boyd on those grounds, although there are many similarities to the Boyd case. Undoubtedly, there are many similarities. I do think there are critical, critical differences here that are determinative because of the due diligence problem that Griffin simply cannot overcome. Unless this Court has any other questions, I will wrap up. Thank you. We don't. Thank you. Ms. Birch, Mr. Dodd, five minutes. Judge Karnes, I've gone back and looked at the order denying Mr. Griffin COA in 2010, and Judge William Pryor signed that order. And it appears that Mr. Griffin only included a 60B issue in that COA. However, as I said, that shouldn't mean that he conceded the 59E denial. It was all one narrative, one event. But if the 59E can be read as pretty dispositive, excuse me, on this letter issue, Judge Forrester makes a ruling about the letter, and it's not going to count. And it wasn't really much of a motion, and it's out of time. Then at that point, if he doesn't appeal, isn't — aren't we then stuck essentially with what that district court ruling was? He doesn't get to revive it some 10 years later? No, Your Honor. Again, Mr. Griffin's 59E motion didn't start a new issue. It simply was related to the earlier one. And we look back at the origin of Judge Forrester's denial in 2009. He rested on successiveness first and foremost. He did not say as an alternative and independent grant. We're less assuming we think he does say as an alternative. Well, even so — even so, Your Honor, he was wrong. The COA denial later is not binding, ought not bind this court today. That one-judge order didn't have any discussion at all the time in this question, and it ought not be treated as binding. So you're saying if we see a district court some years before has ruled on the same claim, prisoners free to bring it again years later and just say the district court was wrong earlier? Generally, no, Your Honor, no. Well, specifically, what? Yes or no? Specifically, yes, no, Your Honor. Finality cannot be — One or the other, do we get to pick or do you? Your Honors certainly make the final choice on that topic. But finality cannot be gained at all costs. As Judge Hill once wrote in Gilbert, finality without justice is not justice. But justice without — I'm sorry. I've got myself twisted. We get the drift, but that's not in 2255F. You're right, Your Honor. But finality must give way in rare circumstances. Here, finality is not served by closing the door once again to Mr. Griffin. But you can say that to every claim barred by the statute of limitations. I mean, we've held claims barred by the statute of limitations where the attorney made a big mistake. It's not the pro se Petitioner's — or not the Petitioner's fault, you know, a layman in prison. And we've held those claims foreclosed, a large number of decisions doing that. So we can't just simply say it's the lawyer's fault or there was a mistake or somebody dropped the ball. It really has to be an extraordinary circumstance to mount to tolling. And I don't see how your argument fits under 4, exception 4. I just don't. Well, the reason it fits, Your Honor, is that Mr. Griffin raised the claim in the state court within nine months of his federal sentence. That is prompt action if I've ever seen it. The later orders in the district court simply got it wrong each and every time. And under Boyd — But if you raise something within the time and then you repeat it five years out of time or nine years out of time, isn't that barred by the statute of limitations? It may be in some situations, but that's not what happened here. Mr. Griffin was relentless in raising the issue in every way conceivably possible under every federal rule that we can imagine. And while this does have superficial appeal to say, as the government does, enough is enough, there are exceptions even when finality is as important as it is. The finality principle is based on a couple of factors that simply don't apply here. First, it's meant to uphold the integrity of the process. The problem is there's the rule of law and there's no law enacted in the United States Code that says, regardless of the rules set out herein, where necessary you can create an exception and it's all governed by finality and when we shouldn't have it. It's just not — we can't just equitably say that rule is not going to apply. I agree, Your Honor. But in Boyd, the Court created a path that this Court ought to follow. In Boyd, it was unclear whether the district court ruled on timeliness. It was simply not clear enough from the record, as is true here. But I think we've made our position clear, that we read that order as having ruled on it. Yes, Your Honor. And I don't have a better answer than the one that I've offered to date, Your Honor. Appreciate that. Thank you. Thank you, Mr. Dodge. We appreciate it. Next case up is Carman — Dale Carman Sanchez v. U.S. Attorney General. All right. Mr. Emanuel. Mrs. Emanuel.